All right. May it please the court. My name is Brian Newman. I represent the appellant, Mr. Phan, in this matter. Your honors, there's no evidence that Mr. Phan knew that a illegal counterfeit check conspiracy was going on at the time he met Mr. Doe and Mr. Ha on August the 1st of 2002. There's no evidence that, and there was no evidence presented, that Mr. Phan exercised a conscious avoidance of any illegal knowledge. What transpired, your honors, was that Mr. Phan, meeting Mr. Doe at a little coffee shop where they played some board games in the past, had never met Mr. Ha before, and then proceeded with Mr. Doe and Mr. Ha to a restaurant. At that restaurant, Mr. Doe showed Mr. Ha a check. Mr. Phan may or may not have touched the check. That matter was not conclusively proven, but he may have seen a check. He at least saw the check. The testimony was that he believed that Mr. Doe did not have that kind of money. That's the sum total of the evidence to establish that Mr. Phan knew that Mr. Doe and Mr. Ha were conducting an illegal counterfeit check operation here. The agents for the FBI Secret Service, I believe, had never heard of Mr. Phan before, had never seen Mr. Phan before, until he showed up at the Long Beach Yacht Club with Mr. Ha in Alexis. Your honor, the possession, the jury found Mr. Phan not guilty of conspiracy. Certainly the government or the court and the court found that somehow Mr. Phan was acting as an aider and abetter of Mr. Ha and Mr. Doe. It doesn't make much sense when the jury acquits on the conspiracy count and the fact that under count four of the indictment, Mr. Phan was never charged as an aider and abetter, but that he intentionally and willfully possessed with the intent to distribute a counterfeit check. What is the test in the review for insufficient evidence? I think it's de novo, your honor. De novo review? Yes, your honor. And then what do we have to do? We have to disagree with the jury or how do we engage in the de novo review? I think what your honors have to look at as the evidence that was presented and the weight of the evidence. Just merely because we disagree with the jury, we can upset a conviction? Is that the test? No, your honor. I think your honor has to find that there was substantial evidence to establish guilt beyond a reasonable doubt. There was no evidence at all? Is that what we have to find? Not that there was no evidence. There wasn't enough to establish guilt beyond a reasonable doubt. Not that there was no evidence, but it is a high burden of establishing guilt beyond a reasonable doubt. However, your honor, has to look at the evidence in the light that's favorable to the government. But in this case, your honor, there is no evidence that Mr. Phan knew that this was an illegal operation. There's none whatsoever, other than the fact that he drove to Long Beach Yacht Club with Mr. Ha. There's no evidence that he knew anything illegal was transpiring. Exactly what happened at the Yacht Club? At the Yacht Club, your honor, he drove to the Yacht Club, met with, he was the driver, Mr. Ha was the passenger, met with Mr. Doe, who was with another gentleman, turns out to be an undercover agent. In that case, it's sort of like the perennial Chinese fire drill. Well, you know, that's the dumbest thing I've heard anyone say in here in a while, you know. I apologize, your honor, but the fact is that... I mean, you've got to use your head when you stand up there and speak sometimes. Your honor, in this instance, what happened is Mr. Ha was to give Mr. Doe a check, the check, the envelope with the check. Do you know what I'm talking to you about? No, your honor. I wouldn't figure that. My reference to the Chinese fire drill was that everyone exits the car and comes back into the car. In this particular instance, that's exactly what happened. It's a pejorative phrase against the Chinese people. I apologize for not being conscious of that, but your honor, that's... Where have you been in the past 50 years? Considering I'm 51, your honor, it's... Got it pretty close anyway. I apologize for the remark, your honor. Don't apologize to me. You should apologize to the world for that. The fact that I'm getting at, your honor, is that Mr. Ha was handing Mr. Doe the envelopes with the checks. In order to do that, Mr. Fan had to exit the Lexus. Mr. Ha climbed over the center console to exit the driver's side door, as it was established by the agents that the passenger side door did not work. After he did that, Mr. Ha handed Mr. Doe the check, the envelope. They got back into the car, Mr. Ha climbing back over the console, Mr. Fan getting back in the car, and then proceeding to another part of the parking lot. When they came back to deliver the second envelope, rather than do that, everyone exited in the car. Mr. Ha simply handed to Mr. Fan the envelope, who handed it to Mr. Doe. And certainly I apologize for offending anyone with regard to the comment, but the fact is, is that rather than go through this elaborate procedure of Mr. Ha having to climb over the center console, out the passenger side of this two-door vehicle, handing Mr. Fan the check to give to Mr. Doe, does not establish that Mr. Fan had dominion control over this envelope, that he had any kind of control over this envelope, other than the fact, excuse me, that he touched the envelope for a fleeting second. And for that reason, Your Honor, there is no evidence that Mr. Fan, at any point, knew that we were dealing in the illegal activity. He was out for a short while. You want to save some time for rebuttal? Yes, I would, Your Honor. All right. Thank you. We'll hear from the government. May it please the Court. Tom Lozier for the United States. Your Honors, the test for sufficiency of the evidence is that in the light most favorable to the prosecution, could any rational trier of fact have found the essential elements beyond a reasonable doubt? From Jackson v. Virginia. And furthermore, the evidence and all reasonable inferences, when viewed in the light most favorable to the government, sustain the verdict. Now, in this case, there was a significant amount of evidence that this defendant was involved, participated, and was guilty, as found by the jury. Specifically, there was the surveillance and the testimony of the agents that were present when the transaction took place. And what they saw was one defendant arrive who didn't have the counterfeit checks. He was there. He met with the undercovers. When he saw that the deal was going to happen, he called his two accomplices and told them it's a go, bring the checks. So whom did he call? Well, he called a cell phone that was in the car with the two defendants. There was not any evidence presented as to who picked up and talked on the phone. We don't know who it was. But we do know what was said. What was said by Defendant Doe were directions as to how to get there. And the driver of the car was the defendant. So it's certainly possible that the jury could have inferred from that that Mr. Doe was speaking to the driver, because that's who showed up in the car driving with the checks. Now, it's important to note that the defendant knew that these checks were in the white envelopes. And he said that in his statement. And he saw that envelope, and he saw at least one of the checks in the restaurant. And on past examination, he stated that he knew that those envelopes were in the car that he got into and that he drove from the car wash to the site of the illicit transaction. Now, at some point along that trip, two of those checks went from the white envelopes into this brochure, a brochure from a gas station that arguably could have been in the glove box or some other place within the car. And then on the first pass, the co-defendant, Mr. Ha, got out of the car and went into the car with the flyer and handed it to co-defendant Doe. Now, the defendant, Mr. Fan, saw this. He watched the whole thing. He got out of the car and stood and waited. So he saw this handoff of the checks. And these were the checks that he knew were illegitimate checks, because he said that when he saw them at the restaurant, he knew his friend Doe didn't have $20,000, and he knew you can't legitimately sell a check. So he watched that handoff, and then they went off a distance and waited. And another call came in, and that was the call saying, okay, bring the rest of the checks. So they drive back around, and this time the defendant himself hands over that same white envelope he saw earlier that has the checks. Now, when asked about what his knowledge was, he was asked, did you know that there were 20 counterfeit checks in that envelope? And the defendant's response wasn't that he didn't think there was anything illegal going on. What his response was, up to this day, I don't believe that he has that many checks within those two envelopes. He's not saying, I didn't know there were any checks in there. He's saying, well, I didn't know that all 20 checks were in there. Let's talk about that for a little bit. It's the government who asked for 20 checks, is that right? That's correct. Isn't this somehow sentencing entrapment? You get $400,000, and you can up the ante on the sentence. They could have done it with one check, couldn't they? Your Honor, I haven't briefed a sentencing entrapment aspect in this case. But it jumps out at you the moment you look at this. You see, the government agent asked for $400,000. That sets the sentence, doesn't it? It does. It does set the sentence. It's like a drug case. Well, no, because a lot of the sentencing entrapment cases that I'm familiar with in narcotics cases are reverse things where the government supplies an amount of narcotics. And let's say the defendant was going to do a drug deal for an ounce of cocaine, and the government tries to up the count. I didn't mean to have you go down that path. I'm sorry, Your Honor. So you just go back to the why. In this case, the defendants were the ones supplying the counterfeit checks. So had they been unable to or unwilling to, then they could have simply said we can't make that many, we can't get you that many. This, if they had said you could, one could argue that with any amount, be it $10,000, be it $100,000, be it $1,000,000, the test here for entrapment is whether or not they had a propensity. Now, we know that Defendant Doe, who set up this deal, had done the two transactions previously. So in terms of a classical entrapment defense, I think clearly there was evidence that there was a propensity to commit this crime and a willingness to do it that had been invinced before. And when that first transaction was set up for the next day for the $400,000, Mr. Doe said I'm not going to be alone. I'm going to have other people with me. And the two people he had with him were the defendant and Mr. Ha. And they set up the deal so that each of them would minimize their risk. And the way they do that is by having one guy show up first without the checks. Once everything's checked out and in the clear, then he calls up his accomplices and says, okay, let's bring the checks. And because these three were acting in concert, this is how they set the deal up to go forward. Now, the defendant in this paper argues, well, the deal could have happened without my guy. That is, Ha, he could have driven the car. Well, I think that whenever you have a case that involves more than one player, or even when there is only one player, one could always argue, well, it could have been done a different way. But the fact here, it wasn't done a different way. It was done this way. And in this case, there was a significant amount of evidence to inculpate Mr. Fan. I'm sorry, Your Honors, I have a terrible cold that I'm working through. But here we have not just the fact that he showed up and was observed delivering the res of the crime. We also have that meeting beforehand. And at that meeting, he sees a check, he touches a check. He knows they're in the white envelopes. He even knows that something illegal is going on. And he says by his own testimony that his friend didn't have that kind of money and he knew that it wasn't right. Now, does that rise to the level of the government proving an intent to deceive? Well, we can't take a snapshot, an X-ray of the defendant's brain and say, look, ladies and gentlemen of the jury, here's his intent to deceive. But what we can do is show them circumstantial evidence which tends to indicate that he had that necessary intent to deceive. And the circumstantial evidence in this case that the jury saw involved the admitted meeting beforehand, the concerted activity to get the checks to the transaction. And I think it's important to note that after that second delivery, after the time that the defendant, after seeing the first delivery take place, after he went and delivered the 18 of the checks the second time, they didn't drive away. Now, remember, Mr. Doe had his own car. He could have taken the proceeds of this crime had it occurred, the $40,000 he was slated to get, and driven off. That's not what happened. Mr. Phan and Mr. Ha went to the other end of the parking lot and they parked and they waited. Why did they wait? Well, the jury could easily have inferred from the record in front of them that they waited because they were waiting to get paid. Now, the defendant testified that, no, I wasn't going to get anything for this. The jury didn't have to believe that. And clearly, by returning their verdict of guilty, perhaps they did not believe that. They certainly didn't believe the defendant's statement on the stand that he wasn't guilty of this crime. On that, Your Honor, without further questions, the government would submit. All right. Thank you. Mr. Buttle. Your Honor, I think the fact of the circumstances at the Long Beach Yacht Club almost proved Mr. Phan's point, and that is going through this elaborate scheme so that Mr. Phan would establish that he wanted nothing to do with this transaction by having Mr. Ha climbing over the console and all that. He wants to distance himself and not be involved. The fact that it was inconvenient and certainly not comfortable for getting in and out of that car, which was described by the agents as being a sports car model Lexus, the two-door with a center console, that the second time, the fact that Mr. Ha just handed the envelope to Mr. Phan, who just handed it to Mr. Doe, was more than adequate. That Mr. Ha, I mean, I'm sorry, that Mr. Phan was not intermixing himself into this distribution of these checks, but merely accommodating Mr. Ha by fleetingly handing this envelope to Mr. Doe. The fact that they waited in the parking lot, Mr. Phan testified that they were supposed to be going driving and that they were going on an excursion for the morning, and Mr. Phan may or may not, and this was not in the evidence at all, waiting for Mr. Ha and Mr. Doe to finish their business for him to go on, and that he was being merely present at the location. Just very, very briefly with regard to sensing issues, Your Honors, the Court essentially found that Mr. Phan and Mr. Ha were comparable and compatible on the same level as far as giving a adjustment, downward adjustment, for being a minor player. I submit to Your Honors that Mr. Ha was much more involved in this matter. Mr. Ha was the one who had the cell phone. There's no evidence that Mr. Phan had the cell phone at all. The car was Mr. Phan, was Mr. Doe, I'm sorry, Mr. Ha's, I believe, and in all the negotiations we've done with Mr. Doe, and certainly I think that, as I described and was described during the case of the trial, that Mr. Phan's, if he was participating, was a peripheral participation and no more than that, and should have allowed the Court to find that he was a minimal participant. As the Court doesn't have any further questions, I will end it. Thank you very much. We'll get to the third matter on the calendar. Kenneth Kim Parks v. Tom Carey, Warden.
judges: B. Fletcher, Pregerson, Ferguson